Daniel L. Mitchell for the appellants. The appellants, your honors, are Hispanic. They're homeowners. They purchased property in the Hayward Hills for many years before the incidents that bring us to this court took place. That is that they bought big lots because they wanted to raise animals on their property. They purchased property in the Hayward Hills for many years before the incidents that bring us to this court took place. That is that they purchased property in the Hayward Hills for many years before the incidents that bring us to this court took place. So it's your position that notwithstanding the expansion of population and all the other pressures that might cause changes to occur in zoning, this area of land is forever sort of like in a little under the dome, as it were, in a place where zoning ordinances cannot be altered? It's not that I've said it. It's that the California Supreme Court has said it, that the covenants that run with the land cannot be replaced by ordinances. In fact, when they bought the property … How is that a federal claim? I'm sorry? How is that a federal claim? Well, as I understand it, it's a matter of comedy between the federal court and the state court that the federal court would apply the law of the state of California as announced by its Supreme Court with respect to this situation. That is, that. And interestingly enough, no one, although we raised it, no one in ruling on the Demers ever suggested that the covenants were anything but what they were. They did not rule. The only thing that was addressed by the trial court was the effectiveness of the ordinances. And we have, as we point out in our brief and in our reply, we have pointed out to this court that the covenants exist and existed, as a matter of fact, for at least 30 years. Does California law provide that if you and I enter into … I sell you land and I offer certain covenants that go with that land, that the state of California has no power to alter those? It — that's correct. It runs with the land. That's, in fact, what this case … So have you got a taking claim? I'm sorry? Haven't you got a taking claim? Isn't that the essence of your claim, then, that if you're correct that those covenants have to run with the land and that California cannot alter them, that if California has in fact altered them in a way that disadvantages you, isn't that a takings claim? Well, that would be a taking. But that isn't what you pleaded. But that's not what you pleaded. You pleaded enforcement. I'm sorry? You pleaded enforcement of the ordinance in an improper manner. You did not plead a takings claim. Is that correct? Well, I believe that in amending — in amending, we did say those things. But I — I did want to point out that that's what the citizens versus citizens for covenant compliance versus Anderson was about. Those involved CC&Rs, which in fact were present at the time of sale of property to the owners of this track land that was purchased in the attempt to circumvent the CC&Rs. And the California Supreme Court allowed us how that was not appropriate. The — at the time of the purchase of the property, at which time this covenant was in place, there was also an ordinance. The ordinance was consistent with the covenant that ran with the land. And that covenant and ordinance were in existence for a period of at least 30 years before it was decided, not by the County of Alameda, but by the Homeowners Association, who are defendants in this case, decided that there was something wrong with this ordinance, such that the ordinance had to be changed. And the effect of changing the ordinance was to detrimentally affect my client's interest in the use of their property. In this case, where — So what is the Federal claim there? You have a — you have a change in the ordinance. They changed the ordinance so that they — And you didn't — and it hurt your clients. What is the Federal claim? What violates Federal law about that, the changing of an ordinance? Oh, well, this — this was addressed when we were — when we were dealing with selective enforcement and the taking of their property without due process. What occurred here — what occurred here is where they could have a number of animals on the property, they no longer could, because the ordinance, as proposed, passed upon, not by my clients, reduced the acreage and the number of animals that could be kept on this property consistent with the new ordinance, not the ordinance that had been in effect for 30 years, and not with respect to the covenant that ran with the land. So the issue before this Court seems to be whether or not the covenant that ran with the land is entitled to its enforcement as written. And we set it out in our brief as to what it was. Okay. Did you wish to save some rebuttal time? I will, because there are two appellees in this case. Okay. Thank you. Great. We'll hear from the appellees in whichever order they prefer to argue. May it please the Court. Robert Ryder on behalf of the defendant, County of Alameda. I'm Deputy County Counsel with the Alameda County Counsel's Office. I'd first like to address this whole takings issue and the citizens case. What he claims the citizens case states, it doesn't state. It's not about an ordinance. No. It's not about an ordinance at all. It's about binding purchasers. Versus deeds. It's about notice forward to the world. Yes, notice forward. It doesn't say anything about that you can't change an ordinance, just because it's stated in 1948 one way that you can't change it again later. He's cited no case that says that. There are cases, however, for example, some of the cases of the Supreme Court dealing with folks who have beachfront or waterfront property, and the State decides that it's going to have a much more restrictive use of the land that affects what the people assumed when they came in, that are actionable under the takings clause. So isn't it possible that if you had farmland that all of a sudden that somebody had had in production for, let's say, 100 years, and all of a sudden you said this has got to be residential, that the farmer has an action under the takings clause? Well, the takings clause requires much more than. Oh, I realize it hasn't been pled here, but I'm just asking in theory whether you might not have an action in takings, which would be very different and requires exhaustion of State remedies. Correct. And that would be a State claim. And, yes, it's conceivable. But we don't have that much here. Here you're just changing, like you do in the coastal cases. Here you're just making a change to the number of animals that could be kept on the property. But in order to have a takings claim, you would have to allege some kind of economic impact. There's no economic impact alleged. Did the county actually cite a couple of the plaintiffs here? Say that again? Did the county, in fact, cite some of the plaintiffs here for violating the new ordinance? Yes. Okay. And what did it cite them for? They cited them for violating the ordinance for having the wrong number, excess number of animals as pled. And do you know, is there anything in the record that tells us what the actual violation was? Too many goats? I don't believe so, Your Honor. Three cows and they could only have one? I don't believe it's in the record, Your Honor. Okay. Do we know how many citations the county has issued? There's only three in the record that we know of. There were three citations that were issued. And that is in the record. Okay. But we don't know how many total citations. Those are all three citations of the plaintiffs, right? Yes. Of three of the plaintiffs. There's eight of the plaintiffs where there's no citation. We don't have a record as to, do we know that nobody else was? Does the record indicate that no one else was cited? There's no evidence of anyone else being cited. Well, there's no evidence. Isn't this a motion to dismiss? Yes. Right. And there's no allegation of the county's awareness of any non-Hispanic homeowner keeping excess animals but not being cited. Is that correct? That's correct, Your Honor. Because, remember, even what they cite in their brief is they received, excuse me, in their Second Amendment complaint, they say that complaints were received from citizens of the homeowners association and that the sheriff's office went to investigate and, in fact, then issued the citations. How big are these parcels? Well, they have to be at least 40,000 square feet. Which is how much of an acre? I believe they have to be at least an acre. It's about an acre, 40,000 square feet. So they're not enormously huge, these parcels. And when, you know, as the sheriff's department is, just like when they get complaints of crime, they respond to complaints. So they responded to complaints. There's no allegation here that the appellants show that the sheriff's office somehow knew that non-Hispanic parcels were violating the law, that the sheriff's office knew that they were violating the law, and they failed to prosecute them. That's not even alleged in his Second Amendment complaint. And that's his third chance at the complaint. Basically what plaintiffs are stating here is they don't like the new county ordinance, that they don't like that it's being enforced, and that some of them are Latino. But that's not sufficient for a selective prosecution claim under the 14th Amendment. You know, there's simply not enough here under federal law to support a selective prosecution claim, despite the fact that they had three opportunities to do so in their complaint. You know, as the cases cite, like the LaTrieste case, mere failure to prosecute others is insufficient for the purpose of establishing an equal protection violation. They've got to show something more. There has to actually be a selection by the sheriff's office. The county would actually have to make a selection and say, for instance, we are going to prosecute Latino people, and we are not going to prosecute non-Latino people. And they don't even really allege that. They're intent by a pattern. I can't show. Well, that's insufficient, though, under selective prosecution. Well, even if it's insufficient, whether it's sufficient or not, it's not pleaded, right? Correct. It's not pled in the complaint, in the Second Amendment complaint. And I would refer you to the Armstrong case that we cited. And you would have the ship. Not only that, under selective prosecution, the sheriff's office would have to know that there were other violations from the control group, from the non-Hispanic control group. And their Second Amendment complaint doesn't say that, that the sheriff's office knew about other complaints of that nature. So in essence, they have to show that the county selectively prosecuted, you know, because of and not in spite of. Okay. And they don't cite any non-Hispanic, any evidence of non-Hispanics not being enforced. They don't cite any evidence of that. And so they aren't showing that these particular people are similarly situated. We don't even really know what the control group is. I mean, I assume, for the sake of argument, that he's saying non-Hispanic landowners in that particular area. But it has to be something more than that, that we actually knew about it, that we made a decision to do it, and none of that is alleged. But that's your co-counsel. Yes. Co-counsel. Okay. Thank you, Your Honor. Thank you. Good morning, Your Honors. My name is James Farinaro. May it please the Court. I represent five homeowner defendants, Mr. Silva, Bush, Creagie, Parham, and Bancroft. In this case, it's undisputed that these defendants, they're non-employees of the county. They have no affiliation whatsoever with the county of Alameda. Mr. Reiter just explained the portion of our case which deals with the discrimination, whether there's a federal violation of 1983. Before we even get to that issue, with regards to the homeowners, purely private individuals here caught up in this change in the county ordinance, is that first, before we even get to those issues that Mr. Reiter discussed, we need a finding that there's evidence that these homeowner defendants, who are officers of the local homeowners association, that they acted under the color of state law. And what that requires is a showing that there is plausible evidence here where we could reach some sort of reasonable inference that there's a conspiracy. Is it alleged or was it argued that they were behind the change in the ordinance? Well, Your Honor, this is what we've had to deal with. In terms of what is actually alleged, it comes down to, unfortunately, a few selected words, which unfortunately doesn't, you don't prove a conspiracy by just saying the word conspiracy. So what we have here is the clients that I represent are alleged to have urged, and I quote that word, that's what's used in the complaint, they're alleged to have urged the county of Alameda to issue these demands for compliance with the ordinance codes. I think Judge Schroeder's question, if I understood it, was whether the individual defendants are alleged to have instigated the change in the ordinance that was antecedent to the complaints of violating the new ordinance. No, Your Honor. They're alleged to have urged the county to issue demands for compliance. With the new ordinance, but they weren't responsible for the, there's no allegation that they were responsible. And they're alleged to have made frequent and unwarranted complaints to the county. And so they are alleged to have urged the county to enforce the ordinances. That's all the amended complaint says. It's just those two allegations, that we've made frequent and unwarranted complaints, and that we've urged the county to enforce the ordinance. That's all we're alleged to have done. We have, obviously these homeowners have no powers to change the law. There's no allegations that they participated in any particular secretive meetings. There's no allegations there's any common objections. And they are not alleged to have done anything corrupt. This is not a case where there's allegations of bribery or some sort of criminal activity on our part. And so there's just, there's no evidence that would allow reports by ordinary citizens in our society to the local law enforcement folks, to ask the local law enforcement to conduct an investigation of any type of infraction. That is what the appellants are asking the court to find, that based on these vague, unsupported allegations, that almost any type of activity by local homeowners or citizens reporting infraction, activity to local law enforcement would rise to the level of a conspiracy. And so we're wholly lacking in any evidence which would allow the trial court or jury to make any kind of inference that there is a conspiracy. Thank you, Your Honor. Thank you, counsel. Mr. Mitchell, you have some rebuttal time remaining. The attorney for the county is wrong when he responded to questions about people being cited. I think in our briefs we addressed that subject and we said that the county had stopped citing during the pendency of this litigation after issuing the number of citations that we mentioned in our brief. The citations were not just for violating the ordinance, but also for not securing a permit, a permit which required extraordinary fees and a hold harmless agreement by the individual for the benefit of the county. Now, that's what those, that's what that was, that's what was going on. And up to date, they've issued ten more. They've been issuing them left and right, but only to Hispanic, only to my clients have those citations been issued. So to suggest that the sheriff's department doesn't know is... Well, that really wasn't their argument, counsel. Their argument was that there is no allegation of similar violations of the ordinance by non-Hispanic homeowners in the same neighborhood of which they are aware. True. And I don't see that allegation in your complaint. That there is. That there are non-Hispanics who are violating the ordinance in the same way as your clients have. It's my recollection that, well, let me just digress for a moment and point out that we were given an opportunity to amend by filing a single cause of action, which we did, and that single cause of action was related to selective law enforcement. Now, we filed that, and, of course, the county and the individuals once again demurred and moved to strike or whatever else they did. So the only thing that was addressed by the trial court was the demur. To which I had to respond. Now, having said that, we conducted no discovery in this case. We were not allowed to argue orally this... Right, but before you get to the fact of discovery, you've got to be able to allege a claim. And your claim for selective enforcement here has got to allege that there are similarly situated non-Hispanic property owners maintaining too many animals in violation of the same ordinance that the police have not cited. Did you make that allegation in your complaint? If so, which paragraph? I was just looking at the complaint to see if I could just immediately answer your question. Well, the complaint says what the complaint says. Right. I didn't see it in there. I'm just wondering whether I've missed something. I just don't remember what all of these... I'm just wondering whether I've missed something.  I'm just wondering whether I've missed something. Is the county in violation of the 14th Amendment, if it enforces the law against all violators, and it turns out that those are all Hispanics? Did they? No, I'm asking... It's a theoretical question. Oh, theoretical, yes. The only person they cited were Hispanics. Right. If the only persons who have violated the law are Hispanic, has the county violated the 14th Amendment? Has it? Yes. Do you have a case for that? Well, that's my understanding. Well, if you select to prosecute your... If the county has selected to prosecute your clients, then it has selected not to prosecute other people. Isn't that correct? If they did that, they did... The only person they cited were my clients. The only person they prosecuted were my clients. They did not cite others, that is, non-Hispanic, non... They did not cite any person, not a minority. But, counsel, if we don't know whether any non-Hispanic violated the ordinance, how is that unlawful or unconstitutional? If all the non-Hispanics have nothing but, you know, one small dog and one small cat, why is that selective prosecution? It is if the only people who get cited are Hispanic and the only people who get cited for not... for violating an ordinance contrary to the covenant. And I did want to make sure that we mention that the county has not suggested that they attempted to or in any way sought to enforce the covenant they ran with the land. The only thing they're talking about is the ordinance, and the only thing they ever talked about was the ordinance. And I consistently have said that it's not just the ordinance. We're dealing with the covenant. The covenant protects their ability to have land and a certain acreage for the number of animals that they were using. And, anyway, having said that, I think... I submit. Thank you, counsel. The case just argued is submitted. We appreciate the arguments of all counsel.
judges: SCHROEDER, GRABER, BYBEE